**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIS P. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:08-cv-87** |
| | ) | |
| **CITY OF FLORALA, ALABAMA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AMENDED COMPLAINT**

The City of Florala, Alabama, submits this memorandum in support of its motion to dismiss the plaintiff's amended complaint.  On its face, the amended complaint fails to state a claim upon which relief can be granted.

## I.  INTRODUCTION

This lawsuit arose from a confrontation that plaintiff Willis P. Miller admits he initiated with a citizen named Jackie Inabinett.  (See Am. Compl. at 2, ¶ 5.)  Miller admits he approached Inabinett, raised his cane in the air and cursed Inabinett in front of two Florala police officers.  (See Compl. at 2-3, ¶ 6.)

Miller sues Officer Perry Williams, Officer Christopher Neal, and the City because Officer Williams grabbed his cane, forced him to the ground, and arrested him for his threatening behavior.  (See Compl. at 2-3, ¶ 6.)

Miller's amended complaint contains six counts:

- Count I alleges excessive force against Officer Williams and the City of Florala in violation of the Fourth Amendment.

- Count II alleges arrest without probable cause in violation of the Fourth Amendment.

- Count III alleges false imprisonment under state law.

- Count IV alleges assault and battery under state law.

- Count V alleges Officer Neal breached a duty to intervene in the incident and protect the plaintiff from Officer Williams.

- Count VI alleges the City of Florala negligently hired, trained, and supervised Officer Williams.

Officer Williams has not been served with a summons and complaint. Officer Neal has not been properly served yet.

The amended complaint does not state a claim against the City upon which relief can be granted.

## II. <u>ANALYSIS</u>

### A.  Motion to Dismiss Standard

"A motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

"In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party."  <u>Barnette v. Phenix City</u>, No. 3:05-cv-473-WKW, 2006 WL 680595, at *1 (M.D. Ala. Mar. 15, 2006) (Watkins, J.).

The threshold is "exceedingly low" to survive a motion to dismiss.  <u>See Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 703 (11th Cir. 1985).

**B.  Failure to State a Claim Against the City of Florala**

    **1.  *Count I: 4th Amendment Use of Force Claim***

Count I states:

> 12.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.
>
> 13.  Defendant Williams while operating in the line and scope of his employment with Defendant City of Florala did use excessive force when effecting an unlawful arrest of plaintiff.
>
> 14.  Defendant's conduct was violative of the United States Constitution's 4th amendment prohibition of unlawful searches and seizures.
>
> 15.  As a proximate result Plaintiff was injured and damaged as previously alleged.
>
> Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and cost.

(Am. Compl. at 5, ¶¶ 13-15.)

In essence, Count I alleges Officer Williams unreasonably seized Miller in violation of the Fourth Amendment by using excessive force during an arrest.

Count I should be dismissed for two reasons.  First, Miller's excessive force claim is subsumed in his false arrest claim in Count II.  Second, the doctrine of *respondeat superior* is inapplicable to § 1983 litigation.

    **a.     *The Excessive Force Claim is Subsumed***

"Under this Circuit's law … a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1171 (11th Cir. 2000).

Because Miller alleges Officer Williams arrested him without probable cause in violation of the Fourth Amendment, (see Am. Compl. at 5, ¶ 18), his excessive force claim is subsumed in the false arrest claim.

**b.     The Doctrine of Respondeat Superior Does Not Apply in § 1983 Litigation**

While Count I alleges Officer Williams was "operating in the line and scope of his employment with Defendant City of Florala," it does not specifically claim the City of Florala is liable for Officer Williams' conduct under the doctrine of *respondeat superior*.     However, Count I's *ad damnum* clause demands judgment against "Defendants" (plural).

To the extent Count I asserts a *respondeat superior* claim against the City, it must be dismissed.

According to the Supreme Court, "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978); see also Snow v. City of Citronelle, 420 F.3d 1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of respondeat superior."); Henderson v. Inabinett, No. 2:05-cv-64-WKW, 2006 WL 1132979, at *5 (M.D. Ala. Apr. 27, 2006) (Watkins, J.) ("Municipalities may not be held liable on a *respondeat superior* theory.").

**2.  Count II: 4th Amendment False Arrest Claim**

Count II states:

16.     Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

4

17.     Defendant's arrest of Plaintiff was false.

18.     Plaintiff was not guilty of Assault and Defendant's arrest was unlawfully effected as he had no probable cause.

19.     Plaintiff was not taken into custody for his own safety or anyone else's safety.

20.     Defendant's conduct violates Plaintiff's 4th Amendment rights to be free of unlawful searches and seizures.

21.     As a proximate result Plaintiff was injured and damaged as previously alleged.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and costs.

Count II alleges Officer Williams unreasonably seized the plaintiff in violation of the Fourth Amendment by arresting him without probable cause.

### a.     *Miller's arrest was supported by probable cause.*

"The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).

"The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).

"A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has

reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Brescher v. Von Stein, 904 F.2d 572, 578 (11th Cir. 1990).

"This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).

"Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

"When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002).

"The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Bailey v. Board of County Comm'rs of Alachua County, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

"When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on

an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973).

"No officer has a duty to prove every element of a crime before making an arrest." Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007). "Police officers are not expected to be lawyers or prosecutors." Scarbrough v. Myles, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

The absence of a conviction, or even a prosecution, does not factor into the analysis. See Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002) ("Knight was never convicted or even prosecuted for that crime or any other stemming from the arrest, but that does not matter.").

Miller admits he intentionally approached Inabinett, cursed him and raised his cane against him in the presence of two police officers. (See Am. Compl. at 2-3, ¶¶ 5-6.) Miller's own admissions establish probable cause for his arrest on charges of Harassment, Menacing, and Disorderly Conduct.

The Alabama Code defines Harassment as follows:

(a)(1) HARASSMENT. A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

    a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

    b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

Ala. Code § 13A-10-8 (1975).

The City is mindful of the requirement that, in most cases, the abusive or obscene language under Subsection (a)(1)(b) must amount to "fighting words" in order to be criminal.  See Robinson v. State, 615 So. 2d 112, 113-14 (Ala. Crim. App. 1992).

However, "where the words or actions are manifested in the form of a threat – a person may commit the crime of harassment even if the words do not rise to the level of 'fighting words'." Fallin v. City of Huntsville, 865 So. 2d 473, 476 (Ala. Crim. App. 2003).

As an alternative prong of the offense, Subsection (a)(2) states, "harassment shall include a threat, verbal *or nonverbal,* made with the intent to carry court the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety."  Ala. Code § 13A-10-8(a)(2) (1975).

Miller admittedly approached Inabinett, raised a cane in the air, and directed abusive and obscene language toward him.  (See Am. Compl. at 2-3, ¶¶ 5-6.)  That gave the officers probable cause to arrest Miller under Subsection (a)(1)(b).

Officers Williams and Neal also had probable cause to believe Miller's nonverbal actions in raising the cane would place a reasonable person in fear. Therefore, they had probable cause to arrest Miller under Subsection (a)(2).

The officers also had probable cause to arrest Miller for Menacing:

(a) A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.

(b) Menacing is a Class B misdemeanor.

Ala. Code § 13A-6-23 (1975).

In <u>Harris v. State</u>, 398 So.2d 777, 779 (Ala. Crim. App. 1981), the Alabama Court of Criminal Appeals held, as a matter of law, that a club was a deadly weapon.

In this case, Miller approached Inabinett, raised a cane in the air, cursing Inabinett during the confrontation that Miller admits he intentionally initiated. (<u>See</u> Am. Compl. at 2-3, ¶¶ 5-6.) An objectively reasonable police officer could have concluded that Miller placed Inabinett in fear of imminent serious physical injury by approaching Inabinett and raising the cane while verbalizing anger toward him.

The officers also had probable cause to arrest Miller for Disorderly Conduct:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

(3) In a public place uses abusive or obscene language or makes an obscene gesture; or

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

(b) Disorderly conduct is a Class C misdemeanor.

Ala. Code § 13A-11-7 (1975).

Miller admittedly engaged in conduct that gave Officers Williams and Neal probable cause to believe he committed the offense of Disorderly Conduct. Miller admits he intentionally initiated a confrontation with Inabinett. (See Am. Compl. at 2-3, ¶¶ 5-6.) Miller admits he approached Inabinett and raised his cane in the air. (See Id.) Miller admits he verbally expressed his anger toward Inabinett as he did so. (See Id.)

Officers Williams and Neal had probable cause to believe Miller engaged in threatening behavior in violation of Subsection (a)(1). They also had probable cause to believe Miller directed fighting words toward Inabinett in violation of Subsection (a)(3).

### b.     Respondeat Superior *liability does not apply.*

In any event, this claim will not lie against the City of Florala. The doctrine of *respondeat superior* does not apply to 1983 claims. See Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978) "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); Snow v. City of Citronelle, 420 F.3d 1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of

10

respondeat superior."); <u>Henderson v. Inabinett</u>, No. 2:05-cv-64-WKW, 2006 WL 1132979, at *5 (M.D. Ala. Apr. 27, 2006) (Watkins, J.) ("Municipalities may not be held liable on a *respondeat superior* theory.").

### 3. Count III: State Law False Imprisonment

Count III states:

22. Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

23. Defendants having no cause to arrest Plaintiff arrested Plaintiff and charged him with assault.

24. Defendants' policy and procedure was to transport all arrestees to Andalusia from Florala which is 20 miles away to the Covington County Jail.

25. Plaintiff was handcuffed and placed in Defendants' patrol car and driven to Andalusia, Alabama.

26. Plaintiff suffered further injury by the handcuffs that were applied improperly and due to the false imprisonment and extended time he was kept in the patrol car.

27. As a proximate result of Defendants' false imprisonment Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of all defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 5-6, 22-27.)

### (a) Under federal law, a full custodial arrest was justified.

It is unclear whether Count III intends to state a federal claim based upon Miller's transportation to the jail in Andalusia, or a state law claim for false imprisonment.

Under federal law, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001).

"When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1196 (11th Cir. 2002).

Miller cannot state a federal law claim for the custodial arrest.

> **(b)**    ***Under state law, the arrest was supported by probable cause.***

The City assumes Miller intended to state a claim for false imprisonment under state law: "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170 (1975).

As explained in Section II(B)(2)(a), the Officers Williams and Neal had probable cause to arrest Miller for Harassment, Menacing, and Disorderly Conduct. Therefore, his imprisonment as not unlawful.

> **(c)**    ***Under state law,*** **arguable probable cause** ***standard applies.***

A different standard governs Miller's state law false imprisonment claim. Although the doctrine of qualified immunity does not apply to municipalities under federal law, Alabama law affords immunity to municipalities against state law claims. Alabama Code section 6-5-338(b) extends immunity to a

municipality when its officer would be entitled to immunity under section 6-5-338(a):

> (a) Every peace officer ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
>
> (b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.

Ala. Code § 6-5-338 (1975).

"Arrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment." Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005). "Exercising judgment in the enforcement of the criminal laws of the State is a recognized discretionary function." Ex parte Tuscaloosa County, 796 So. 2d 1100, 1106 (Ala. 2000).

In Borders v. City of Huntsville, the Alabama Supreme Court adopted the standard of *arguable probable cause*. 875 So. 2d 1168, 1179-80 (Ala. 2003) ("Although this Court has not directly addressed the issue of the relationship between probable cause and discretionary-function immunity, we agree that the standard of 'arguable probable cause' should govern further proceedings in this case.")

According to the Alabama Supreme Court, arguable probable cause exists when "officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed." Borders, 875 So. 2d at 1179.

13

Because the City is entitled to raise immunity against Miller's state law claims, the arguable probable cause standard applies.

Officers Williams and Neal had arguable probable cause to arrest Miller for Harassment, Menacing, and Disorderly Conduct, so are entitled to State-agent immunity under section 6-5-338(a). Accordingly, the City is also entitled to immunity under section 6-5-338(b). See Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.).

### 4. *Count IV: State Law Assault and Battery*

Count IV states:

28. Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

29. Defendant Williams assaulted Plaintiff while making an unlawful arrest of Plaintiff.

30. Defendant's conduct was willful, malicious, intentional, and in bad faith.

31. As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6, ¶¶ 28-31.)

### (a) *The City has immunity from the assault and battery claim.*

Officer Williams is the only defendant identified by name in Count IV. To the extent Miller contends the City could be liable for an assault

and battery by Officer Williams that was "willful, malicious, intentional, and in bad faith" as alleged in Paragraph 30, his claim is barred by Alabama Code section 11-47-190:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and *while acting in the line of his or her duty... .*

Ala. Code § 11-47-190 (1975) (emphasis added).

"This statute limits a municipality's liability for the acts of its agent to those acts that are negligent, careless, or unskillful. Ex parte City of Tuskegee, 932 So. 2d 895, 910 (Ala. 2005). "Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice." Id. Further, "Section 11-47-190 absolves a city from liability for an intentional tort committed by one of its agents." Borders v. City of Huntsville, 875 So. 2d 1168, 1183 (Ala. 2003).

### b.    *Failure to meet heightened pleading standard.*

In any event, the complaint does not allege willfulness, malice, intent or bad faith sufficiently to overcome a motion to dismiss. Although the Supreme Court abolished the heightened pleading requirement for federal claims against municipalities, the basis for its holding was the inapplicability of qualified immunity to municipalities under federal law. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166-67 (1993).

Since <u>Leatherman</u>, the United States Court of Appeals for the Eleventh Circuit has reaffirmed that, when qualified immunity is implicated, "The heightened pleading requirement is the law of this circuit." <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1368 (11th Cir. 1998).

The Eleventh Circuit has traditionally afforded state law immunity defenses treatment similar to that afforded the federal qualified immunity defense. <u>Cf</u>. <u>Wood v. Kesler</u>, 323 F.3d 872, 877 n.7 (11th Cir. 2003) (holding denial of state law immunity immediately appealable). The heighten pleading standard should apply to Miller's state law claims, because they are all potentially subject to immunity defenses.

Moreover, the Alabama Supreme Court has held that blanket allegations of malice are inadequate:

> It is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause, but this Court has recognized that malice in law, or legal malice, for purposes of a malicious-prosecution claim, is not sufficient to defeat a state agent's defense of discretionary function immunity. This Court has required the plaintiff to prove that the defendant's conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith," by, for example, showing that the defendant "had a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment."

<u>Ex parte Tuscaloosa County</u>, 796 So. 2d 1100, 1107 (Ala. 2000).

Under the heightened pleading standard, "More than mere conclusory notice pleading is required." <u>Fullman v. Graddick</u>, 739 F.2d 553, 556 (11th Cir. 1984). "The complaint must allege the relevant facts with some specificity." <u>Dalrymple v. Reno</u>, 334 F.3d 991, 996 (11th Cir. 2003).

An officer's decision about how much force to use during a lawful arrest is a discretionary function.  See City of Birmingham v. Sutherland, 834 So. 2d 755, 762 (Ala. 2002) ("he was performing a discretionary function when he chose to make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest"); Thurmond v. City of Huntsville, 904 So. 2d 314, 326 (Ala. Civ. App. 2004) ("we conclude that the … officers were engaged in the exercise of a discretionary function … when they made the judgment call on how much force to use and under what circumstances to use it").

Miller has not alleged any facts to support his blanket allegations of willfulness, intent, malice and bad faith.  He has not met the heightened pleading standard, and therefore, cannot overcome Officer Williams' immunity under Alabama Code section 6-5-338(a).

Because Officer Williams is entitled to immunity under section 6-5-338(a), the City is also entitled to immunity under section 6-5-338(b).  See Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." ).

**5.  *Count V: Failure to Intervene***

Count V states:

32.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

33.  Defendant Neal owed a duty to intervene and protect Plaintiff from the assault and excessive force used against Plaintiff by Defendant Williams.

34.  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amount of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6-7, ¶¶ 32-34.)

Miller does not specify whether he asserts this claim under state or federal law.  The City cannot find any authority for a duty to intervene under state law.  However, there is a duty to intervene under federal law.

"It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.  Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."  Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).

"In order for an officer to be liable for failing to stop another officer's unconstitutional use of deadly force, the officer must be in a position to intervene."  Jackson v. Sauls, 206 F.3d 1156, 1174 (11th Cir. 2000).

### a.    The doctrine of respondeat superior does not apply.

Again, however, the doctrine of *respondeat superior* does not apply to § 1983 claims.  "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978); see also Snow v. City of Citronelle, 420 F.3d

1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of respondeat superior."); Henderson v. Inabinett, No. 2:05-cv-64-WKW, 2006 WL 1132979, at *5 (M.D. Ala. Apr. 27, 2006) (Watkins, J.) ("Municipalities may not be held liable on a *respondeat superior* theory.").

Even if Officer Neal breached a duty to intervene, which the City disputes, Count V still does not state a claim against the City.

### b.    Insufficient allegation of excessive force.

In any event, the alleged facts do not give rise to a viable underlying claim for excessive force.

"In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury."  Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).

"This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."  Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham v. Connor, 490 U.S. 386, 396 (1989).  "The application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

"Government officials are not required to err on the side of caution."  Owens v. Butler County, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001).  "All the

Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." Harrell v. Decatur County, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

In Nolin v. Isbell, the United States Court of Appeals for the Eleventh Circuit held force did not rise to level of Fourth Amendment violation when officer allegedly "grabbed [plaintiff] from behind by the shoulder and waist, threw him against a van three or four feet away, kneed him in the back, and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." 207 F.3d 1253, 1255 (11th Cir. 2000).

In Jones v. City of Dothan, held force did not rise to level of Fourth Amendment violation when officer allegedly "slammed" plaintiff against a wall, kicked his legs apart, and required him to raise his hands above his head. 121 F.3d 1456, 1458 (11th Cir. 1997).

In Post v. City of Ft. Lauderdale, the Eleventh Circuit held force did not rise to level of Fourth Amendment violation when officer allegedly pushed plaintiff into a wall. 7 F.3d 1552, 1559-60 (11th Cir. 1993) ("even though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful.").

The actions described in the amended complaint do not rise to the level of excessive force. They also do not demonstrate how Officer Williams could have intervened.

**5.  *Count VI: State Law Negligent Hiring, Training and Supervision***

Count VI states:

35.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

36.  Defendant City of Florala owed a duty to Plaintiff to properly hire, train and supervise Defendant Williams.

37.  Defendant had at the time Plaintiff was attacked prior knowledge that Defendant Williams had used excessive force in the discharge of his duties.

38.  Defendant City of Florala failed to provide additional training or supervision to Defendant Williams and continued to employ Defendant Williams which amounted to deliberate indifference to his conduct.

39. Defendant City of Florala continued to allow Defendant Williams to work unsupervised for the City with the knowledge that he had been involved in the use of excessive force against private citizens.

40  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 7, ¶¶ 35-40.)

Under Alabama law, municipalities cannot be liable for negligent hiring, training or supervision.

In <u>City of Crossville v. Haynes</u>, the Alabama Supreme Court held a plaintiff cannot bring a direct claim against a municipality for negligence.  925 So. 2d 944, 956 (Ala. 2005) ("Haynes was not entitled to assert a 'direct' claim against the City of Crossville under § 11-47-190.").  The Supreme Court held the city was entitled to a judgment as a matter of law and reversed a jury award for the plaintiff.  <u>See</u> <u>id.</u>

21

In Styron v. City of Foley, Judge Granade of the United States District Court for the Southern District of Alabama held, "Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training." No. 03-572-CG-L, 2005 WL 3098926, at *4-5 (S.D. Ala. Nov. 18, 2005) (Granade, C.J.).

Judge Butler reached the same holding in Ott v. City of Mobile, 169 F. Supp.2d 1301, 1314-15 (S.D. Ala. 2001) (Butler, C.J.) (holding direct action will not lie against municipality for negligent training of police officer).

Section 11-47-190 is the barrier against this type of claim:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation**, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body** and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.

Ala. Code § 11-47-190 (1975) (emphasis added).

Section 11-47-190 limits municipal liability for personal injuries to two circumstances: (1) *respondeat superior* liability based on the neglect, carelessness or unskilfulness of a municipal employee and (2) defective conditions in the streets, alleys, public ways, or buildings. Category (2) is the only form of direct action for personal injury allowed against a municipality.

In City of Lanett v. Tomlinson, the Alabama Supreme Court explained:

> This Court has long interpreted § 11-47-190 to limit municipal liability to two distinct classes. The municipality may be liable (1) under the doctrine of respondeat superior for injuries that result from the wrongful conduct of its agents or officers in the line of duty. The municipality may also be liable (2) for injuries that result from its failure to remedy conditions created or allowed to exist on the streets, alleys, or public ways by a person or corporation "not related in service" to the municipality.

City of Lanett v. Tomlinson, 659 So. 2d 68, 70 (Ala. 1995).

In this case, there is no allegation of a defect in the City's streets, alleys, public ways, or buildings. Therefore, a direct action will not lie.

That leaves only the *respondeat superior* circumstance. The question becomes whether Miller could maintain a claim against one of the City's other employees – such as the police chief – for negligently hiring, training or supervising Officer Williams. If the police chief could be liable under such circumstances, then Miller could try to hold the City responsible for the Chief's alleged negligence under § 11-47-190.

The problem, however, is that Alabama law does not impose a duty upon supervisory employees with regard to the hiring, training or supervision of their subordinates. The duty lies exclusively with the employer. In Ott v. City of

Mobile, Chief United States District Judge Butler of the Southern District

explained this concept:

> Alabama law is clear that the tort of negligent supervision or
> training requires as an element the existence of a master-servant
> relationship. "We are mindful of ... the fact that this Court
> recognizes a cause of action against the master based upon the
> incompetence of the servant." Lane v. Central Bank, N.A., 425
> So.2d 1098, 1100 (Ala.1983)(emphasis added); accord Big B, Inc. v.
> Cottingham, 634 So.2d 999, 1002-03 (Ala.1993).  A supervisor is
> not the master of a subordinate, nor is the subordinate the servant
> of the supervisor; rather, as Alabama cases make plain, the status
> of "master" is restricted to one who is actually or essentially the
> employer of the servant.  E.g., Tyson Foods, Inc. v. Stevens, 783
> So.2d 804, 807-08 (Ala.2000) (a contractor becomes the master of
> a subcontractor by retaining sufficient right to control the manner
> in which the subcontractor works); Hauseman v. University of
> Alabama Health Services Foundation, 793 So.2d 730, 735-36
> (Ala.2000) (using "master" interchangeably with "employer").
> Indeed, the plaintiffs recognize as much, admitting that their
> theory does not depend on negligence of the "employer or master"
> but of a supervisor. (Doc. 68 at 27).  Accordingly, because Alabama
> recognizes no cause of action against a supervisor for negligent
> failure to supervise or train a subordinate, Count Four is due to be
> dismissed.

169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001).

Assuming *arguendo* that a police chief could be liable for the hiring,

training, or supervision of a subordinate, however, the chief would have

immunity for negligence.  See City of Crossville v. Haynes, 925 So. 2d 944, 956

(Ala. 2005) (holding police chief entitled to State-agent immunity against

negligent training claim); Howard v. City of Atmore, 887 So. 2d 201, 209-10

(Ala. 2003) (holding police chief entitled to State-agent immunity against

negligent training claim).

Accordingly, the City is likewise immune under Alabama Code § 6-5-

338(b).  See Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) ("It is

well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." ).

There is no viable basis upon which to hold the City liable for alleged negligence in the hiring, training or supervision of Officer Williams.  The City has immunity from such claims under sections 11-47-190 and 6-5-338(b).

### III.  CONCLUSION

For the foregoing reasons, City of Florala respectfully moves to dismiss all claims against it with prejudice.


**s/ James H. Pike**
Attorney for Defendant
The City of Florala, Alabama

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail jpike@scplaw.us

## CERTIFICATE OF SERVICE

I, James H. Pike, certify that on March 25, 2008, I electronically served

this document upon:

L. Cooper Rutland, Jr.
RUTLAND LAW, LLC
P.O. Box 551
Union Springs, Alabama  36089


**s/ James H. Pike**
James H. Pike