**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIS P. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:08-cv-87** |
| | ) | |
| **CITY OF FLORALA, ALABAMA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AMENDED COMPLAINT**

Christopher Neal submits this memorandum in support of his motion to dismiss the plaintiff's amended complaint (Doc. 11). On its face, the amended complaint fails to state a claim upon which relief can be granted. Officer Neal is also entitled to qualified immunity against the plaintiff's federal claims and State-agent immunity against the plaintiff's state law claims.

## I.  INTRODUCTION

This lawsuit arose from a confrontation that plaintiff Willis P. Miller admits he initiated with a citizen named Jackie Inabinett. (See Am. Compl. at 2, ¶ 5.) Miller admits he approached Inabinett, raised his cane in the air and cursed Inabinett in front of two Florala police officers. (See Compl. at 2-3, ¶ 6.)

Miller sues Officer Perry Williams, Officer Christopher Neal, and the City because Officer Williams grabbed his cane, forced him to the ground, and arrested him in response to his threatening behavior. (See Compl. at 2-3, ¶ 6.)

Miller's amended complaint contains six counts.

1

Count I alleges excessive force against Officer Williams and the City of Florala in violation of the Fourth Amendment.

Count II alleges arrest without probable cause by Officer Williams in violation of the Fourth Amendment.

Count III alleges false imprisonment under state law.

Count IV, which is incorrectly labeled as Count V, alleges assault and battery by Officer Williams under state law.

Count V, which is incorrectly labeled as Count VI, alleges Officer Neal breached a duty to intervene in the incident and protect the plaintiff from Officer Williams.

Count VI alleges the City of Florala negligently hired, trained, and supervised Officer Williams.

The City has already filed a motion to dismiss the claims against it. Officer Williams has not appeared yet.

The amended complaint does not state a claim against Officer Neal upon which relief can be granted.

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 1965.

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265 (1986).

The facts alleged by the plaintiff in his amended complaint do not state a claim upon which relief can be granted.

## B. Failure to State a Claim Against Officer Christopher Neal

### 1. Count I: 4th Amendment Use of Force Claim

Count I states:

12. Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

13. Defendant Williams while operating in the line and scope of his employment with Defendant City of Florala did use excessive force when effecting an unlawful arrest of plaintiff.

14. Defendant's conduct was violative of the United States Constitution's 4th amendment prohibition of unlawful searches and seizures.

15. As a proximate result Plaintiff was injured and damaged as previously alleged.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and cost.

(Am. Compl. at 5, ¶¶ 13-15.)

In essence, Count I alleges Officer Williams unreasonably seized the plaintiff in violation of the Fourth Amendment by using excessive force during an arrest. Count I does not make any allegations against Officer Neal.

As to Officer Neal, Count I should be dismissed for failure to state a claim and based on the doctrine of qualified immunity.

### a.  Failure to State a Claim

"[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

In this case, the amended complaint's alleged facts do not state a claim against Officer Neal for excessive force. The amended complaint does not allege that Officer Neal actually used any force against the plaintiff.

As to Officer Neal, Count I should be dismissed for failure to state a claim upon which relief can be granted.

### b.  Qualified Immunity

Officer Neal is also entitled to qualified immunity against the plaintiff's excessive force claim.

"We generally accord ... official conduct a presumption of legitimacy." United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991). "There is a strong public interest in protecting public officials from the costs associated

with the defense of damages actions." Crawford-El v. Britton, 523 U.S. 574, 590 (1998).

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity." O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). "The purpose of qualified immunity is to ensure that officials are not deterred or distracted from carrying out their official duties because of fear of a later lawsuit." Robinson v. Arrugueta, 415 F.3d 1252, 1257 n.5 (11th Cir. 2005).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001).

"Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

"These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949), cert. denied, 339 U.S. 949 (1950)).

"Qualified immunity is a question of law that may be asserted in three ways: (1) on a pretrial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c); or (3) on a summary judgment motion pursuant to Federal Rule of Civil Procedure 56(e)." Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

"In cases where defendants are entitled to qualified immunity, it is imperative that they receive the benefits of that defense prior to trial through Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(c), or Fed. R. Civ. P. 56(c)." Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996).

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." Tinker v. Beasley, 429 F.3d 1324, 1326 (11th Cir. 2005).

### i. Discretionary Function

"To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). "Immunity generally is available only to officials performing discretionary functions." Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982).

"To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)).

"Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

"In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Paragraph 4 of the amended complaint alleges, "Defendant Christopher Neal ... at all times pertinent to this Complaint was acting within the line and scope of his employment as a Police Officer with the Defendant The City of Florala." (Doc. 11 at 2, ¶ 4.)

In light of that contention, the issue of whether Officer Neal was performing a discretionary function at the time of the incident is resolved in Officer Neal's favor.

### ii. Burden Shift

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

### iii. No Allegation of Constitutional Right Violation

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"[I]f a defendant has not violated the law at all, he certainly has not violated clearly established law." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000).

Count I does not allege that Officer Neal violated a constitutional right. Rather, the allegations of Count I are directed entirely against Officer Williams and his former employer, the City of Florala.

Because Count I does not allege that Officer Neal violated a constitutional right, Officer Neal is entitled to qualified immunity against the plaintiff's § 1983 excessive force claim.

### 2. Count II: 4th Amendment False Arrest Claim

Count II states:

16.    Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

17.    Defendant's  arrest of Plaintiff was false.

18.    Plaintiff was not guilty of Assault and Defendant's arrest was unlawfully affected as he had no probable cause.

19.    Plaintiff was not taken into custody for his own safety or anyone else's safety.

20.    Defendant's conduct violates Plaintiff's 4th Amendment rights to be free of unlawful searches and seizures.

21.    As a proximate result Plaintiff was injured and damaged as previously alleged.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and costs.

Count II alleges Officer Williams unreasonably seized the plaintiff in violation of the Fourth Amendment by arresting him without probable cause.

See Am. Compl. at 3, ¶ 8 ("Defendant Williams had no probable cause to arrest Plaintiff and his doing so was false.")  Count II does not make any allegations against Officer Neal.

As to Officer Neal, Count II should be dismissed for failure to state a claim and based on the doctrine of qualified immunity.

### a.  Failure to State a Claim

As discussed above, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

The amended complaint does not allege that Officer Neal actually arrested the plaintiff.  To the contrary, it specifically alleges that Officer Williams arrested the plaintiff: "Defendant Williams had no probable cause to arrest Plaintiff and his doing so was false."  (Am. Compl. at 3, ¶ 8.)

Accordingly, the amended complaint does not state a § 1983 claim against Officer Neal for false arrest under the Fourth Amendment.

### b.  Qualified Immunity

Officer Neal is also entitled to qualified immunity against the plaintiff's § 1983 false arrest claim.

### i.  Discretionary Function

"In assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to

engage in unconstitutional searches and seizures, but whether engaging in searches and seizures is a part of his job-related powers and responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Again, the amended complaint pleads that Officer Neal acted within the line and scope of his employment as a police officer throughout the incident. (See Doc. 11 at 2, ¶ 4.)  This allegation satisfies the threshold "discretionary function" requirement for Officer Neal to invoke the qualified immunity defense.

### ii.  Burden Shift

"Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The plaintiff did not meet his burden.

### iii.  No Allegation of Constitutional Right Violation

The amended complaint specifically pleads that Officer Williams was the officer that arrested the plaintiff.  (See Doc. 11 at 3, ¶ 8 ("Defendant Williams had no probable cause to arrest Plaintiff and his doing so was false.").)  Count II does not make any allegation that Officer Neal violated a constitutional right.

Even if Officer Neal had arrested the plaintiff, the amended complaint does not allege facts that demonstrate a constitutional violation.  The amended complaint describes how the plaintiff intentionally confronted Jackie Inabinett, cursed him, and raised a cane against him in anger.  (See Doc. 11 at 2, ¶¶ 5-6.)

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without

11

violating the Fourth Amendment, arrest the offender." <u>Atwater v. City of Lago</u> <u>Vista</u>, 532 U.S. 318, 354 (2001).

"The existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest." <u>Kingsland v. City of</u> <u>Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004).

"The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." <u>Bailey v. Board of County Comm'rs of Alachua</u> <u>County</u>, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

"When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." <u>United States v. Saunders</u>, 476 F.2d 5, 7 (5th Cir. 1973).

"There is no question that an officer's subjective intent is immaterial when there is an objectively reasonable basis for believing that an offense has occurred." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1088 n.5 (11th Cir. 2003).

"Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

"Police officers are not expected to be lawyers or prosecutors." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

The fact that charges may have later been dropped is irrelevant. <u>See</u> <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1275 (11th Cir. 2002) ("Knight was never convicted or even prosecuted for that crime or any other stemming from the arrest, but that does not matter.").

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." <u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003).

"Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004).

"A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Brescher v. Von Stein</u>, 904 F.2d 572, 578 (11th Cir. 1990).

"Simply put, our case law makes clear that probable cause exists whenever an officer reasonably believes that an offense is being committed." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1090 (11th Cir. 2003).

"Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996).

The plaintiff's alleged facts establish probable cause for the plaintiff's arrest on the state law crimes of Harassment, Disorderly Conduct, and Menacing.

The Alabama Code defines Harassment as follows:

(a)(1) HARASSMENT. A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

> a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

> b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

Ala. Code § 13A-11-8 (1975).

In most cases, the abusive or obscene language under Subsection (a)(1)(b) must amount to "fighting words" in order to be considered criminal. See Robinson v. State, 615 So. 2d 112, 113-14 (Ala. Crim. App. 1992).

However, "where the words or actions are manifested in the form of a threat – a person may commit the crime of harassment even if the words do not rise to the level of 'fighting words'." Fallin v. City of Huntsville, 865 So. 2d 473, 476 (Ala. Crim. App. 2003).

As an alternative prong of the offense, Subsection (a)(2) states, "harassment shall include a threat, verbal *or nonverbal*, made with the intent to carry court the threat, that would cause a reasonable person who is the

target of the threat to fear for his or her safety."  Ala. Code § 13A-10-8(a)(2) (1975).

Miller admittedly approached Inabinett and raised a cane in the air while he directed abusive and obscene language toward him.  (See Am. Compl. at 2-3, ¶¶ 5-6.)  Those actions constituted probable cause to arrest Miller under Subsection (a)(1)(b).

The officers also had probable cause to believe that Miller's nonverbal actions in raising the cane would make a reasonable person feel threatened. Therefore, they had probable cause to arrest Miller under Subsection (a)(2).

The officers also had probable cause to arrest Miller for Menacing:

> (a) A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.

> (b) Menacing is a Class B misdemeanor.

Ala. Code § 13A-6-23 (1975).

In Davis v. State, 470 So.2d 1340, 1341-42 (Ala. Crim. App. 1985), the Alabama Court of Criminal Appeals held that a tree limb used to strike a victim constituted a deadly weapon.

In Austin v. State, 555 So.2d 324, 328 (Ala. Crim. App. 1989), the Alabama Court of Criminal Appeals held, "We find that a piece of lumber, when used to hit another in the head and body, constitutes a dangerous instrument."

In Harris v. State, 398 So.2d 777, 779 (Ala. Crim. App. 1981), the Alabama Court of Criminal Appeals held that a club was a deadly weapon as a matter of law.

In this case, Miller raised a cane to Inabinett while cursing him during a confrontation that Miller admits he intentionally started. An objectively reasonable police officer could have concluded that Miller placed Inabinett in fear of imminent serious physical injury by raising the cane while cursing him.

The officers also had probable cause to arrest Miller for Disorderly Conduct:

> (a)   A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>> (1) Engages in fighting or in violent tumultuous or threatening behavior; or
>>
>> (2) Makes unreasonable noise; or
>>
>> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
>>
>> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
>>
>> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
>>
>> (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.
>
> (b) Disorderly conduct is a Class C misdemeanor.

Ala. Code § 13A-11-7 (1975).

Miller admittedly engaged in conduct that gave the officers probable cause to believe he committed the offense of Disorderly Conduct. Miller admits he intentionally initiated a confrontation with Inabinett. (See Am. Compl. at 2-3, ¶¶ 5-6.) Inabinett admits he approached Miller and then raised his cane. (See Id.) Inabinett admits he cursed Miller while he raised the cane. (See Id.)

The officers had probable cause to believe Miller engaged in threatening behavior in violation of Subsection (a)(1).  They also had probable cause to believe he directed fighting words toward Inabinett in violation of Subsection (a)(3).

"Though the facts must be taken in the light most favorable to [the plaintiff], the determination of reasonableness must be made from the perspective of the officer."  Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005).

Because the officers objectively had probable cause to arrest the plaintiff for three crimes, the plaintiff has failed to allege a constitutional violation.

### iv.  Law Not Clearly Established

"Even 'constitutionally impermissible conduct' might not render government officials liable for civil damages if those actions had not been clearly established as violative of the Constitution when they occurred."  Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003).

 "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity."  Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

"Officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).

"Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

"Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

"Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

"Qualified immunity is a sharply focused, situation bound analysis." Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

18

"A plaintiff cannot strip a § 1983 defendant of her qualified immunity by citing to general rules or abstract rights." Wilson v. Strong, 156 F.3d 1131, 1134 (11th Cir. 1998). "The unlawfulness must have been apparent." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

"The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000).

"When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." Marsh v. Butler County, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001).

Decisions of other circuits are "immaterial to whether the law was 'clearly established' in this circuit for the second prong of Saucier." Vinyard v. Wilson, 311 F.3d 1340, 1348 n.11 (11th Cir. 2002). "The case law of one other circuit cannot settle the law in this circuit to the point of it being 'clearly established.'" Hansen v. Soldenwagner, 19 F.3d 573, 578 n.6 (11th Cir. 1994).

Again, "Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The plaintiff cannot identify any factually similar holding that would have placed the officers on notice that arresting the plaintiff under these circumstances violated clearly established law.

The state of the law simply was not clearly established that the plaintiff's described conduct did not rise to the level of probable cause to believe he was guilty of Harassment, Menacing, and Disorderly Conduct.

Therefore, Officer Neal is entitled to qualified immunity against the § 1983 false arrest claim in Count II.

### 3. *Count III: State Law False Imprisonment Claim*

Count III states:

22.  Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

23.  Defendants having no cause to arrest Plaintiff arrested Plaintiff and charged him with assault.

24.  Defendants' policy and procedure was to transport all arrestees to Andalusia from Florala which is 20 miles away to the Covington County Jail.

25.  Plaintiff was handcuffed and placed in Defendants' patrol car and driven to Andalusia, Alabama.

26.  Plaintiff suffered further injury by the handcuffs that were applied improperly and due to the false imprisonment and extended time he was kept in the patrol car.

27.  As a proximate result of Defendants' false imprisonment Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of all defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 5-6, 22-27.)

Count III alleges a state law claim for false imprisonment: "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170 (1975).

Officer Neal is entitled to dismissal of the plaintiff's state law false imprisonment claim based upon the existence of probable cause to arrest. Officer Neal is also entitled to dismissal of the plaintiff's state law false imprisonment claim under the doctrine of State-agent immunity. See Ala. Code § 6-5-338(a) (1975).

### a.  Failure to State a Claim

Count III does not state a false imprisonment claim under state law, because the plaintiff's alleged facts demonstrate the existence of probable cause to arrest.

"When considering whether an arrest is valid … the only requisite is that at the time the arrest is made, the police officer have probable cause." Carruth v. Barker, 454 So. 2d 539, 540 (Ala. 1984). "An officer need not have enough evidence or information to support a conviction to have probable cause to arrest." Couch v. City of Sheffield, 708 So. 2d 144, 156 (Ala. 1998).

Section II(B)(2)(b)(iii), supra, demonstrates why the officers had probable cause to arrest the plaintiff for Harassment, Menacing, and Disorderly Conduct.

Therefore, Officer Neal is entitled to dismissal of the false imprisonment claim in Count III for failure to state a claim upon which relief can be granted.

### b.  State-agent Immunity

Officer Neal is also entitled to dismissal of the plaintiff's state law false imprisonment claim based upon the doctrine of State-agent immunity:

> Every peace officer ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a) (1975).

"The statute shields every defendant who (1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment and discretion." Howard v. City of Atmore, 887 So.2d 201, 204 (Ala. 2003).

A police officer qualifies as a peace officer for purposes of § 6-5-338. See Borders v. City of Huntsville, 875 So.2d 1168, 1178 (Ala. 2003) ("As a police officer, Earle qualifies as a peace officer for purposes of § 6-5-338.").

"Discretionary functions are broadly defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Borders v. City of Huntsville, 875 So.2d 1168, 1178 (Ala. 2003).

"Arrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment." Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005).

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is

22

based upon the agent's … (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000).

"The Cranman standard answers in the affirmative the question whether arresting a person is an exercise of judgment – a 'discretionary function' – and therefore clothes the officer in State-agent immunity." Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005).

The standard of *arguable probable cause* governs the application of discretionary function immunity to a warrantless arrest. See Borders v. City of Huntsville, 875 So.2d 1168, 1180 (Ala. 2003) ("we agree that the standard of arguable probable cause should govern further proceedings in this case"); Greene v. Byrd, 897 So. 2d 1107, 1115 (Ala. Civ. App. 2003) ("Our supreme court has recently adopted the concept of 'arguable probable cause' in cases in which a police officer claims discretionary-function immunity after making a warrantless arrest.").

For the reasons explained in Section II(B)(2)(b)(iii) and (iv), supra, the officers had arguable probable cause to arrest the plaintiff for the crimes of Harassment, Menacing, and Disorderly Conduct. Therefore, Officer Neal is entitled to State-agent immunity against the plaintiff's false imprisonment claim in Count III.

### 4. *Count IV: State Law Assault and Battery Claim*

Count IV states:

28.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

29.   Defendant Williams assaulted Plaintiff while making an unlawful arrest of Plaintiff.

30.  Defendant's conduct was willful, malicious, intentional, and in bad faith.

31.  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6, ¶¶ 28-31.)

Count IV alleges Officer Williams committed an assault and battery against the plaintiff under state law.  Count IV does not make any allegations against Officer Neal.

As to Officer Neal, Count IV should be dismissed for failure to state a claim and based on the doctrine of State-agent immunity.

### a.  Failure to State a Claim

Again, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

The amended complaint does not allege that Officer Neal assaulted or battered the plaintiff.   To the contrary, it specifically states, "Defendant

Williams assaulted Plaintiff while making an unlawful arrest of Plaintiff." (Am. Compl. at 6, ¶ 29.) Count IV is completely silent as to Officer Neal.

Officer Neal is entitled to dismissal of the claims in Count IV.

### b. State-agent Immunity

Officer Neal is also entitled to State-agent immunity against the assault and battery claim under Code of Alabama § 6-5-338 (1975).

"Actions by an officer in executing an arrest are generally considered discretionary functions for purposes of § 6-5-338." Walker v. Briley, 140 F. Supp. 2d 1249, 1263 (N.D. Ala. 2001).

An officer's decision about how much force to use during a lawful arrest is a discretionary function. See City of Birmingham v. Sutherland, 834 So. 2d 755, 762 (Ala. 2002) ("he was performing a discretionary function when he chose to make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest"); Thurmond v. City of Huntsville, 904 So. 2d 314, 326 (Ala. Civ. App. 2004) ("we conclude that the … officers were engaged in the exercise of a discretionary function … when they made the judgment call on how much force to use and under what circumstances to use it").

Although the amended complaint does not allege that Officer Neal used any force against the plaintiff, Officer Neal would have been entitled to State-agent immunity if he had.

Therefore, Count IV should be dismissed as to Officer Neal based on the doctrine of State-agent immunity.

25

**5.  *Count V: Section 1983 Failure to Intervene Claim***

Count V states:

32.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

33.  Defendant Neal owed a duty to intervene and protect Plaintiff from the assault and excessive force used against Plaintiff by Defendant Williams.

34.  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amount of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6-7, ¶¶ 32-34.)

Count V asserts a § 1983 claim against Officer Neal for failure to intervene.  Officer Neal is entitled to qualified immunity against this claim.

**a.  *Discretionary Function***

"In assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures is a part of his job-related powers and responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Based upon the plaintiff's allegation that Officer Neal "at all times pertinent to this Complaint was acting within the line and scope of his employment as a Police Officer," (Doc. 11 at 2, ¶ 4), it is undisputed that Officer Neal meets the threshold requirement to invoke the doctrine of qualified immunity against the plaintiff's § 1983 failure to intervene claim.

### b. *Burden Shift*

"If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. Apr. 11, 2007).

### c. *No Allegation of Constitutional Right Violation*

"Once action within the scope of discretionary authority has been established, a reviewing court's first task is to determine whether the complainant has alleged the deprivation of a cognizable constitutional right." Tinker v. Beasley, 429 F.3d 1324, 1327 (11th Cir. 2005).

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).

However, the plaintiff must plead facts that demonstrate (1) that he was the victim of excessive force in the first place and (2) that Officer Neal could have intervened.

"In order for an officer to be liable for failing to stop another officer's unconstitutional use of deadly force, the officer must be in a position to intervene." Jackson v. Sauls, 206 F.3d 1156, 1174 (11th Cir. 2000).

### i. *No Showing of Excessive Force*

The first reason the plaintiff's failure to intervene claim fails is that he was not a victim of excessive force.

In light of the United States Court of Appeals for the Eleventh Circuit's holding in McCormick v. City of Ft. Lauderdale, 333 F.3d 1234 (11th Cir. 2003), there can be no finding of excessive force under these facts. In McCormick, the Eleventh Circuit held deadly force was justified against a suspect who threatened an officer with a walking stick. See id. at 1246.

If a threat to injure a person with a walking stick justifies deadly force, then any level of force lower than deadly force necessarily must be reasonable.

The defendant could not locate any United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court opinion that held taking a suspect who is threatening another person with a cane or walking stick to the ground and handcuffing him is excessive.

"In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).

"This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989). "The application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

"Government officials are not required to err on the side of caution." Owens v. Butler County, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001). "All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." Harrell v. Decatur County, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

In Nolin v. Isbell, the United States Court of Appeals for the Eleventh Circuit held force did not rise to level of Fourth Amendment violation when officer allegedly "grabbed [plaintiff] from behind by the shoulder and waist, threw him against a van three or four feet away, kneed him in the back, and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." 207 F.3d 1253, 1255 (11th Cir. 2000).

In Jones v. City of Dothan, held force did not rise to level of Fourth Amendment violation when officer allegedly "slammed" plaintiff against a wall, kicked his legs apart, and required him to raise his hands above his head. 121 F.3d 1456, 1458 (11th Cir. 1997).

In Post v. City of Ft. Lauderdale, the Eleventh Circuit held force did not rise to level of Fourth Amendment violation when officer allegedly pushed plaintiff into a wall. 7 F.3d 1552, 1559-60 (11th Cir. 1993) ("even though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful.").

The actions described by Miller in his compliant do not rise to the level of excessive force. They are de minimis as a matter of law.

Officer Neal cannot be liable for failure to intervene in another officer's use of de minimis force in response to a suspect's threat to attack a citizen with a cane.

### ii.  No Showing of Opportunity to Intervene

The plaintiff also has not pled facts that show Officer Neal had an opportunity to intervene.  The amended complaint's entire description of Officer Williams's use of force states, "Defendant Williams took the cane away from Plaintiff and grabbed Plaintiff by his arm and slung him to the ground. Defendant Williams took Plaintiff by the arm and pushed Plaintiff, face first, into a bench on the sidewalk."  (Doc. 11 at 3, ¶ 6.)

These facts do not described the sort of prolonged incident that the "failure to intervene" claim was designed to remedy.

### d.  Law Not Clearly Established

In any event, at the time of this incident on October 13, 2007, the law was not clearly established that a police officer was obligated to intervene and prevent a fellow officer from taking a man to the ground and handcuffing him in response to the man threatening another citizen with a cane.

### i.  No Showing of Excessive Force

On the date of this incident, it was not clearly established that Officer Neal was required to intervene against the use of force described in the amended complaint.

To the contrary, one recent Eleventh Circuit opinion holds that deadly force is permitted to stop an imminent attack with a walking stick. McCormick v. City of Ft. Lauderdale, 333 F.3d 1234 (11th Cir. 2003).

Additionally, a series of Eleventh Circuit opinions characterize the type of force alleged here as de minimis. See Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (holding force de minimis when officer "grabbed [plaintiff] from behind by the shoulder and waist, threw him against a van three or four feet away, kneed him in the back, and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him."); Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th Cir. 1997) (holding force did not rise to level of Fourth Amendment violation when officer allegedly "slammed" plaintiff against wall, kicked his legs apart, and required him to raise his hands above his head); Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (holding force did not rise to level of Fourth Amendment violation when officer pushed plaintiff into wall).

To overcome Officer Neal's qualified immunity defense, the plaintiff must demonstrate that Officer Neal's conduct was clearly unlawful. See Saucier v. Katz, 533 U.S. 194, 202 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that

what he is doing violates federal law." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 926 (11th Cir. 2000).    "In the light of pre-existing law the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

"Government officials are not required to err on the side of caution." <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (en banc). "Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred.  This is what we mean when we say we refuse to second-guess the officer." <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1270 (11th Cir. 2003) (citation omitted).

"We must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene.  We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." <u>Smith v. Freland</u>, 954 F.2d 343, 347 (6th Cir. 1992).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

"All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." <u>Harrell v. Decatur County</u>, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J.,

dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

"In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). "This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).

The United States Supreme Court has said, "Detached reflection cannot be demanded in the presence of an uplifted knife." Brown v. United States, 256 U.S. 335, 343 (1921). That also goes for an uplifted cane.

In Davis v. State, 470 So.2d 1340, 1341-42 (Ala. Crim. App. 1985), the Alabama Court of Criminal Appeals held that a tree limb used to strike a victim constituted a deadly weapon.

In Austin v. State, 555 So.2d 324, 328 (Ala. Crim. App. 1989), the Alabama Court of Criminal Appeals held, "We find that a piece of lumber, when used to hit another in the head and body, constitutes a dangerous instrument."

Harris v. State, 398 So.2d 777, 779 (Ala. Crim. App. 1981), the Alabama Court of Criminal Appeals held that a club constituted a deadly weapon as a matter of law.

In light of these decisions – and especially in light of McCormick's holding that deadly force was authorized against a suspect armed with a stick –

it is clear that the facts alleged in the amended complaint do not show a violation of clearly established law.

### ii. No Showing of Opportunity to Intervene

In <u>Priester v. City of Riviera Beach</u>, the United States Court of Appeals for the Eleventh Circuit held that an officer could be liable under § 1983 for failing to intervene when a fellow officer unleashed his police dog on a compliant suspect. 208 F.3d 919, 924-25 (11th Cir. 2000).  However, in <u>Priester</u> the plaintiff testified that the dog attack lasted "for an eternity."  <u>Id.</u> at 924.

In this case, the plaintiff claims Officer Williams slung him to the ground and pushed him face first into a bench on the sidewalk.  Unlike <u>Priester</u>, in this case there is no allegation of a prolonged beating sufficient to show an opportunity to intervene.

Based on the foregoing, Officer Neal is entitled to qualified immunity against the plaintiff's § 1983 claim for failure to intervene.

### 6. Count VI: State Law Negligent Hiring, Training and Supervision Claim

Count VI states:

35.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

36.  Defendant City of Florala owed a duty to Plaintiff to properly hire, train and supervise Defendant Williams.

37.  Defendant had at the time Plaintiff was attacked prior knowledge that Defendant Williams had used excessive force in the discharge of his duties.

38.  Defendant City of Florala failed to provide additional training or supervision to Defendant Williams and continued to employ

Defendant Williams which amounted to deliberate indifference to his conduct.

39. Defendant City of Florala continued to allow Defendant Williams to work unsupervised for the City with the knowledge that he had been involved in the use of excessive force against private citizens.

40   As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 7, ¶¶ 35-40.)

Count VI alleges the City of Florala negligently hired, trained, and supervised Officer Williams under state law.  Count VI does not make any allegations against Officer Neal.

As to Officer Neal, Count VI should be dismissed for failure to state a claim and based on the doctrine of State-agent immunity.

### a. Failure to State a Claim

As stated previously, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

The amended complaint does not allege that Officer Neal played any role in hiring, training, or supervising Officer Williams.

To the contrary, Count VI specifically alleges, "Defendant City of Florala failed to provide additional training or supervision to Defendant Williams... ." (Am. Compl. at 7, ¶ 38.)  Count VI is completely silent as to Officer Neal.

Even if the amended complaint had alleged that Officer Neal played a role in hiring, training or supervising Officer Williams, Officer Neal would still be entitled to dismissal for failure to state a claim.

In <u>Ott v. City of Mobile</u>, Judge Butler held, "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate."  169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001) (Butler, J.).

"Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship."  <u>Id.</u>

There is no allegation that Officer Neal was Officer Williams's employer. Therefore, the plaintiff could never state a claim against Officer Neal for negligent hiring, training or supervision.

Officer Neal is entitled to dismissal of Count VI for failure to state a claim against him upon which relief can be granted.

### b. State-agent Immunity

Even if Officer Neal had been involved in hiring, training, or supervising Officer Williams, Officer Neal would be entitled to State-agent immunity under Code of Alabama § 6-5-338(a).

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... (2) exercising his or her judgment in the

administration of a department or agency of government, including, but not limited to, examples such as … (d) hiring, firing, transferring, assigning, or supervising personnel." Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000).

In Howard v. City of Atmore, the Alabama Supreme Court held that State-agent immunity includes training:

> In this connection, Howard argues that category (2) does not specifically mention "training." She says: "In category (2)(d), this Court identified certain conduct of supervisory personnel such as Chief McKinley as immune. This Court included hiring, firing, transferring, assigning or supervising. It did not include training." Howard's appellate brief, at 41 (emphasis added). Thus, she argues, "the conduct that is challenged in this case, i.e., training, implementing/enforcing procedures, and identification and handling of potentially suicidal persons in confinement, [does] not fit within any category of conduct recognized by [Cranman] as immune." Id. Once again, Howard reads Cranman too rigidly. "The situations listed in subparagraphs (2)(a)-(d) of the Cranman immunity rule are expressly only 'examples' of the general principle stated in paragraph (2) itself." Ryan v. Hayes, 831 So. 2d 21, 31 (Ala. 2002). **Category (2)(a)-(d) includes "training," as well as "supervising."**

887 So. 2d 201, 210 (Ala. 2003) (emphasis added).

"Training and supervision … fall squarely within category (2) of the Cranman formula." Howard v. City of Atmore, 887 So. 2d 201, 209-10 (Ala. 2003). "Negligent training and supervision are considered discretionary acts." Sherrill v. City of Prattville, Nos. 04-cv-760-T, 04-cv-761-T & 04-cv-762-T, 2005 U.S. Dist. LEXIS 35452, at *13 (M.D. Ala. Dec. 2, 2005) (Thompson, J.).

"Hiring, training, and supervision … are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." Hardy v. Town of Hayneville, No. 99-A-86-N, 1999 U.S.

Dist. LEXIS 4219, at *41 (M.D. Ala. Apr. 1, 1999), <u>modified on reh'g</u>, 50 F. Supp.2d 1176, 1195 (M.D. Ala. 1999) (Albritton, J.).

"Hiring, training, and supervision ... are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." <u>McClure v. Houston County</u>, 306 F. Supp. 2d 1160, 1168 (M.D. Ala. 2003) (Thompson, J.) (quoting <u>Hardy v. Town of Hayneville</u>, No. 99-A-86-N, 1999 U.S. Dist. LEXIS 4219, at *41 (M.D. Ala. Apr. 1, 1999)).

Officer Neal is also entitled to dismissal of Count VI based on the doctrine of State-agent immunity.

### III.   CONCLUSION

For the foregoing reasons, Officer Neal respectfully moves to dismiss all claims against him with prejudice.


<u>**s/ James H. Pike**</u>
Attorney for Defendant
Officer Christopher Neal

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail jpike@scplaw.us

## <u>CERTIFICATE OF SERVICE</u>

I, James H. Pike, certify that on April 29, 2008, I electronically served this document upon:

L. Cooper Rutland, Jr.
RUTLAND LAW, LLC
P.O. Box 551
Union Springs, Alabama  36089


**s/ James H. Pike**
James H. Pike