**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIS P. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:08-cv-87** |
| | ) | |
| **CITY OF FLORALA, ALABAMA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS AMENDED COMPLAINT**

Perry Williams submits this memorandum in support of his motion to dismiss the plaintiff's amended complaint (Doc. 11). On its face, the amended complaint fails to state a claim upon which relief can be granted. Officer Williams is also entitled to qualified immunity against the plaintiff's federal claims and State-agent immunity against the plaintiff's state law claims.

## I.  INTRODUCTION

This lawsuit arose from a confrontation that plaintiff Willis P. Miller admits he initiated with a citizen named Jackie Inabinett. (See Am. Compl. at 2, ¶ 5.) Miller admits he approached Inabinett, raised his cane in the air and cursed Inabinett in front of two Florala police officers. (See Compl. at 2-3, ¶ 6.)

Miller sues Officer Perry Williams, Officer Christopher Neal, and the City because Officer Williams grabbed his cane, forced him to the ground, and arrested him in response to his threatening behavior. (See Compl. at 2-3, ¶ 6.)

Miller's amended complaint contains six counts.

1

Count I alleges excessive force against Officer Williams and the City of Florala in violation of the Fourth Amendment.

Count II alleges arrest without probable cause by Officer Williams in violation of the Fourth Amendment.

Count III alleges false imprisonment under state law.

Count IV, which is incorrectly labeled as Count V, alleges assault and battery by Officer Williams under state law.

Count V, which is incorrectly labeled as Count VI, alleges Officer Neal breached a duty to intervene in the incident and protect the plaintiff from Officer Williams.

Count VI alleges the City of Florala negligently hired, trained, and supervised Officer Williams.

The City and Officer Neal have already filed motions to dismiss the claims against them.

Officer Williams is entitled to qualified immunity against the plaintiff's federal claims and State-agent immunity against the plaintiff's state law claims.

## II.  **ANALYSIS**

### A.  **Motion to Dismiss Standard**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265 (1986).

The facts alleged by the plaintiff in his amended complaint do not state a claim upon which relief can be granted.

## B.  The Plaintiff's Claims

### 1.  Count I: 4th Amendment Use of Force Claim

Count I states:

12.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

13.    Defendant Williams while operating in the line and scope of his employment with Defendant City of Florala did use excessive force when effecting an unlawful arrest of plaintiff.

14.    Defendant's conduct was violative of the United States Constitution's 4th amendment prohibition of unlawful searches and seizures.

15.    As a proximate result Plaintiff was injured and damaged as previously alleged.

> Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and cost.

(Am. Compl. at 5, ¶¶ 13-15.)

In essence, Count I alleges Officer Williams unreasonably seized the plaintiff in violation of the Fourth Amendment by using excessive force during an arrest.   Officer Williams is entitled to qualified immunity against the plaintiff's Fourth Amendment excessive force claim.

### a. Qualified Immunity

"We generally accord … official conduct a presumption of legitimacy." United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991).   "There is a strong public interest in protecting public officials from the costs associated with the defense of damages actions."  Crawford-El v. Britton, 523 U.S. 574, 590 (1998).

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity."  O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004).   "The purpose of qualified immunity is to ensure that officials are not deterred or distracted from carrying out their official duties because of fear of a later lawsuit."  Robinson v. Arrugueta, 415 F.3d 1252, 1257 n.5 (11th Cir. 2005).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Saucier v. Katz, 533 U.S. 194, 200 (2001).

"Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

"These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949), cert. denied, 339 U.S. 949 (1950)).

"Qualified immunity is a question of law that may be asserted in three ways: (1) on a pretrial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c); or (3) on a summary judgment motion pursuant to Federal Rule of Civil Procedure 56(e)." Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

"In cases where defendants are entitled to qualified immunity, it is imperative that they receive the benefits of that defense prior to trial through Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(c), or Fed. R. Civ. P. 56(c)." Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996).

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor;

5

(2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." <u>Tinker v. Beasley</u>, 429 F.3d 1324, 1326 (11th Cir. 2005).

### i. Discretionary Function

"To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004). "Immunity generally is available only to officials performing discretionary functions." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 816 (1982).

"To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004)).

"Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).

"In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Paragraph 3 of the amended complaint alleges, "Defendant Perry Williams … at all times pertinent to this Complaint was acting within the line and scope of his employment as an investigator for the City of Florala." (Doc. 11 at 2, ¶ 3.)

In light of that contention, the issue of whether Officer Williams was performing a discretionary function at the time of the incident is resolved in Officer Williams's favor.

### ii. Burden Shift

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

### iii.  *No Allegation of Constitutional Right Violation*

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

"[I]f a defendant has not violated the law at all, he certainly has not violated clearly established law." <u>Hudson v. Hall</u>, 231 F.3d 1289, 1294 (11th Cir. 2000).

As a matter of law, the force allegations in Count I do not rise to the level of a constitutional violation.

Paragraphs 6 and 7 of the amended complaint allege that Officer Williams (1) took away the cane, (2) grabbed the plaintiff's arm, (3) slung him to the ground, (4) pushed him into a bench, and (5) handcuffed him – in that order.  (<u>See</u> Doc. 11 at 3, ¶¶ 6-7.)  There is no allegation of any physical force <u>after</u> handcuffing.

In other words, the amended complaint alleges Officer Williams started using force when the plaintiff raised his walking stick and stopped using force when the plaintiff was in handcuffs.  (<u>See</u> Doc. 11 at 3, ¶¶ 6-7.)  Apart from the

handcuffing, the only actions attributed to Officer Williams were taking the plaintiff to the ground and pushing him against a bench. (<u>See</u> Doc. 11 at 3, ¶ 6.)

These facts are indistinguishable from the long line of Eleventh Circuit opinions that hold such force does not amount to a constitutional violation. <u>See</u> <u>Durruthy v. Pastor</u>, 351 F.3d 1080 (11th Cir. 2003) (kneed in back); <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1352 (11th Cir. 2002) (painful handcuffing); <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1255 (11th Cir. 2000) (grabbed, thrown against vehicle, kneed in back, head shoved against van); <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1458 (11th Cir. 1997) (slammed into wall); <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446 (11th Cir. 1997) (painful handcuffing with injuries); and <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (pushed against wall).

"In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1351 (11th Cir. 2002).

"This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1094 (11th Cir. 2003).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

"Government officials are not required to err on the side of caution." Owens v. Butler County, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001). "All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." Harrell v. Decatur County, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

Because Count I does not allege that Officer Williams violated a constitutional right, Officer Williams is entitled to qualified immunity against the plaintiff's § 1983 excessive force claim.

### iv.  *No Violation of Clearly Established Law*

Even if the amended complaint could construed to allege a Fourth Amendment excessive force claim, it does not allege a violation of clearly established law.

The plaintiff cannot identify any decision by the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court that holds the force alleged is clearly excessive under these circumstances.  See Lee v. Ferraro, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002) ("In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to

dismissal before the commencement of discovery." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

In his response to Officer Neal's motion to dismiss, the plaintiff relied upon <u>Smith v. Mattox</u>, 127 F.3d 1416 (11ᵗʰ Cir. 1997), as clearly established law. <u>Smith</u> actually upholds an officer's right to use force under the circumstances alleged in this case.

The arrestee in <u>Smith</u> had threatened an officer with a baseball bat. <u>See Smith</u>, 127 F.3d at 1418. After a foot pursuit, the arrestee docilely submitted to arrest. <u>Id.</u> The officer then struck a blow that broke the arrestee's arm. <u>Id.</u> ("with a grunt and a blow – but no sign of anger – Mattox broke Smith's arm").

In affirming the officer's authority to use physical force in this situation, the Eleventh Circuit wrote:

> [E]ven if Smith was not actively resisting arrest at the very moment the force was applied, he was before that moment; *Mattox could reasonably have believed that without some force restraining Smith, he would have resumed his attacks or his flight. Thus, it was not unreasonable for Mattox to think that he was entitled to use some force to put Smith into cuffing posture.*

<u>Smith</u>, 127 F.3d at 1419-20 (emphasis added).

The Eleventh Circuit only faulted the officer in <u>Smith</u> because he broke the plaintiff's arm: "But, assuming as we must that Smith was offering no resistance at all, the considerable effort and force inferable from the grunt, *Smith's sensation of a blow*, and the broken arm was obviously unnecessary to restrain even a previously fractious arrestee." <u>Id.</u> at 1420 (emphasis added).

In short, <u>Smith</u> holds that an officer may continue to use physical force against a previously threatening arrestee while securing the arrestee in handcuffs. That is exactly what the amended complaint alleges here.

Again, paragraphs 6 and 7 of the amended complaint allege that Officer Williams (1) took away the cane, (2) grabbed the plaintiff's arm, (3) slung him to the ground, (4) pushed him into a bench, and (5) handcuffed him – in that order. (<u>See</u> Doc. 11 at 3, ¶¶ 6-7.) There is no allegation of physical force after handcuffing. The is no allegation of a *blow*, as was the case in <u>Smith</u>. <u>See</u> <u>Smith</u>, 127 F.3d at 1420.

The amended complaint alleges that Officer Williams started using force when the plaintiff raised his walking stick and stopped using force when the plaintiff was in handcuffs. (<u>See</u> Doc. 11 at 3, ¶¶ 6-7.) Apart from the handcuffing, the only actions attributed to Officer Williams were (1) taking the plaintiff to the ground and (2) pushing him against a bench. (<u>See</u> Doc. 11 at 3, ¶ 6.)

There is ample Eleventh Circuit authority that the force alleged in the amended complaint is <u>not</u> unlawful. <u>See</u> <u>Durruthy v. Pastor</u>, 351 F.3d 1080 (11th Cir. 2003) (kneed in back); <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1352 (11th Cir. 2002) (painful handcuffing); <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1255 (11th Cir. 2000) (grabbed, thrown against vehicle, kneed in back, head shoved against van); <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1458 (11th Cir. 1997) (slammed into wall); <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446 (11th Cir. 1997) (painful

handcuffing with injuries); and <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (pushed against wall).

"If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." <u>Wilson v. Layne</u>, 526 U.S. 603, 618 (1999).

"A police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1165 (11th Cir. 2000).

"In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1351 (11th Cir. 2002).

"This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1094 (11th Cir. 2003).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

"Government officials are not required to err on the side of caution." <u>Owens v. Butler County</u>, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001). "All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." <u>Harrell v. Decatur County</u>, 22 F.3d

1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

The Supreme Court has recognized that in a close case, the officer receives the benefit of the doubt:

> *Graham* does not always give a clear answer as to whether a particular application of force will be deemed excessive by the courts.  This is the nature of a test which must accommodate limitless factual circumstances.  This reality serves to refute respondent's claimed distinction between excessive force and other Fourth Amendment contexts; in both spheres the law must be elaborated from case to case.  Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes "hazy border between excessive and acceptable force," *Priester v. Riviera Beach*, 208 F.3d 919, 926-927 (C.A.11 2000), and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.

Saucier v. Katz, 533 U.S. 194, 205-06 (2001).

"[T]he Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases."  Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994).

"[Q]ualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful."  Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002).

For the foregoing reasons, Perry Williams is entitled to qualified immunity against the plaintiff's Fourth Amendment excessive force claim.

### 2.  Count II: 4th Amendment False Arrest Claim

Count II states:

14

16.    Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

17.    Defendant's arrest of Plaintiff was false.

18.    Plaintiff was not guilty of Assault and Defendant's arrest was unlawfully affected as he had no probable cause.

19.    Plaintiff was not taken into custody for his own safety or anyone else's safety.

20.    Defendant's conduct violates Plaintiff's 4th Amendment rights to be free of unlawful searches and seizures.

21.    As a proximate result Plaintiff was injured and damaged as previously alleged.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorney fees and costs.

Count II alleges Officer Williams unreasonably seized the plaintiff in violation of the Fourth Amendment by arresting him without probable cause. See Am. Compl. at 3, ¶ 8 ("Defendant Williams had no probable cause to arrest Plaintiff and his doing so was false.")

### a. Qualified Immunity

Officer Williams is also entitled to qualified immunity against Count II.

### i. Discretionary Function

"In assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures is a part of his job-related powers and responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Again, the amended complaint pleads that Officer Williams acted within the line and scope of his employment as a police officer throughout the incident. (See Doc. 11 at 2, ¶ 3.) This allegation satisfies the threshold "discretionary function" requirement for Officer Williams to invoke the qualified immunity defense.

### ii. Burden Shift

"Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The plaintiff did not meet his burden.

### iii. No Allegation of Constitutional Right Violation

The amended complaint describes how the plaintiff intentionally confronted Jackie Inabinett, cursed him, and raised a cane against him in anger. (See Doc. 11 at 2, ¶¶ 5-6.)

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

"The existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).

"The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." <u>Bailey v. Board of County Comm'rs of Alachua County</u>, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

"When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." <u>United States v. Saunders</u>, 476 F.2d 5, 7 (5th Cir. 1973).

"There is no question that an officer's subjective intent is immaterial when there is an objectively reasonable basis for believing that an offense has occurred." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1088 n.5 (11th Cir. 2003).

"Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

"Police officers are not expected to be lawyers or prosecutors." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

The fact that charges may have later been dropped is irrelevant.  <u>See Knight v. Jacobson</u>, 300 F.3d 1272, 1275 (11th Cir. 2002) ("Knight was never convicted or even prosecuted for that crime or any other stemming from the arrest, but that does not matter.").

17

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." <u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003).

"Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004).

"A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Brescher v. Von Stein</u>, 904 F.2d 572, 578 (11th Cir. 1990).

"Simply put, our case law makes clear that probable cause exists whenever an officer reasonably believes that an offense is being committed." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1090 (11th Cir. 2003).

"Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996).

The plaintiff's alleged facts establish probable cause for the plaintiff's arrest on the state law crimes of Harassment, Disorderly Conduct, and Menacing.

The Alabama Code defines Harassment as follows:

(a)(1) HARASSMENT. A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

Ala. Code § 13A-11-8 (1975).

In most cases, the abusive or obscene language under Subsection (a)(1)(b) must amount to "fighting words" in order to be considered criminal. See Robinson v. State, 615 So. 2d 112, 113-14 (Ala. Crim. App. 1992).

However, "where the words or actions are manifested in the form of a threat – a person may commit the crime of harassment even if the words do not rise to the level of 'fighting words'." Fallin v. City of Huntsville, 865 So. 2d 473, 476 (Ala. Crim. App. 2003).

As an alternative prong of the offense, Subsection (a)(2) states, "harassment shall include a threat, verbal or nonverbal, made with the intent to carry court the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety." Ala. Code § 13A-10-8(a)(2) (1975).

Miller admittedly approached Inabinett and raised a cane in the air while he directed abusive and obscene language toward him. (See Am. Compl. at 2-

3, ¶¶ 5-6.)  Those actions constituted probable cause to arrest Miller under Subsection (a)(1)(b).

The officers also had probable cause to believe that Miller's nonverbal actions in raising the cane would make a reasonable person feel threatened. Therefore, they had probable cause to arrest Miller under Subsection (a)(2).

The officers also had probable cause to arrest Miller for Menacing:

(a) A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.

(b) Menacing is a Class B misdemeanor.

Ala. Code § 13A-6-23 (1975).

In <u>Davis v. State</u>, 470 So.2d 1340, 1341-42 (Ala. Crim. App. 1985), the Alabama Court of Criminal Appeals held that a tree limb used to strike a victim constituted a deadly weapon.

In <u>Austin v. State</u>, 555 So.2d 324, 328 (Ala. Crim. App. 1989), the Alabama Court of Criminal Appeals held, "We find that a piece of lumber, when used to hit another in the head and body, constitutes a dangerous instrument."

In <u>Harris v. State</u>, 398 So.2d 777, 779 (Ala. Crim. App. 1981), the Alabama Court of Criminal Appeals held that a club was a deadly weapon as a matter of law.

In this case, Miller raised a cane to Inabinett while cursing him during a confrontation that Miller admits he intentionally started.  An objectively reasonable police officer could have concluded that Miller placed Inabinett in fear of imminent serious physical injury by raising the cane while cursing him.

Officer Williams also had probable cause to arrest Miller for Disorderly Conduct:

(a)   A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

(3) In a public place uses abusive or obscene language or makes an obscene gesture; or

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

(b) Disorderly conduct is a Class C misdemeanor.

Ala. Code § 13A-11-7 (1975).

Miller admittedly engaged in conduct that gave Officer Williams probable cause to believe he committed the offense of Disorderly Conduct.  Miller admits he intentionally initiated a confrontation with Inabinett.  (See Am. Compl. at 2-3, ¶¶ 5-6.)  Inabinett admits he approached Miller and then raised his cane.  (See Id.)  Inabinett admits he cursed Miller while he raised the cane.  (See Id.)

Officer Williams had probable cause to believe Miller engaged in threatening behavior in violation of Subsection (a)(1).  He also had probable cause to believe he directed fighting words toward Inabinett in violation of Subsection (a)(3).

"Though the facts must be taken in the light most favorable to [the plaintiff], the determination of reasonableness must be made from the perspective of the officer." Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005).

Because Officer Williams objectively had probable cause to arrest the plaintiff for three crimes, the plaintiff has failed to allege a constitutional violation.

### iv.  Law Not Clearly Established

"Even 'constitutionally impermissible conduct' might not render government officials liable for civil damages if those actions had not been clearly established as violative of the Constitution when they occurred." Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003).

"If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"Officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).

"Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have

believed that probable cause was present." <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004).

"Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

"Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

"Qualified immunity is a sharply focused, situation bound analysis." <u>Crosby v. Paulk</u>, 187 F.3d 1339, 1345 (11th Cir. 1999). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 926 (11th Cir. 2000).

"A plaintiff cannot strip a § 1983 defendant of her qualified immunity by citing to general rules or abstract rights." <u>Wilson v. Strong</u>, 156 F.3d 1131, 1134 (11th Cir. 1998). "The unlawfulness must have been apparent." <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).

"The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights

is insufficient to strip a § 1983 defendant of his qualified immunity." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1165 (11th Cir. 2000).

"When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001).

Decisions of other circuits are "immaterial to whether the law was 'clearly established' in this circuit for the second prong of <u>Saucier</u>." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1348 n.11 (11th Cir. 2002). "The case law of one other circuit cannot settle the law in this circuit to the point of it being 'clearly established.'" <u>Hansen v. Soldenwagner</u>, 19 F.3d 573, 578 n.6 (11th Cir. 1994).

Again, "Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002).

The plaintiff cannot identify any factually similar holding that would have placed the officers on notice that arresting the plaintiff under these circumstances violated clearly established law.

The state of the law simply was not clearly established that the plaintiff's described conduct did not rise to the level of probable cause to believe he was guilty of Harassment, Menacing, and Disorderly Conduct.

Therefore, Officer Williams is entitled to qualified immunity against the §

1983 false arrest claim in Count II.

### 3. Count III: State Law False Imprisonment Claim

Count III states:

22. Plaintiff realleges all paragraphs of the Complaint as if fully set forth herein.

23. Defendants having no cause to arrest Plaintiff arrested Plaintiff and charged him with assault.

24. Defendants' policy and procedure was to transport all arrestees to Andalusia from Florala which is 20 miles away to the Covington County Jail.

25. Plaintiff was handcuffed and placed in Defendants' patrol car and driven to Andalusia, Alabama.

26. Plaintiff suffered further injury by the handcuffs that were applied improperly and due to the false imprisonment and extended time he was kept in the patrol car.

27. As a proximate result of Defendants' false imprisonment Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of all defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 5-6, 22-27.)

Count III alleges a state law claim for false imprisonment: "False

imprisonment consists in the unlawful detention of the person of another for

any length of time whereby he is deprived of his personal liberty." Ala. Code §

6-5-170 (1975).

Officer Williams is entitled to dismissal of the plaintiff's state law false

imprisonment claim based upon the existence of probable cause to arrest.

Officer Williams is also entitled to dismissal of the plaintiff's state law false

imprisonment claim under the doctrine of State-agent immunity.  <u>See</u> Ala. Code § 6-5-338(a) (1975).

### a.  Failure to State a Claim

Count III does not state a false imprisonment claim under state law.  The plaintiff's alleged facts demonstrate the existence of probable cause to arrest.

"When considering whether an arrest is valid … the only requisite is that at the time the arrest is made, the police officer have probable cause."  <u>Carruth v. Barker</u>, 454 So. 2d 539, 540 (Ala. 1984).  "An officer need not have enough evidence or information to support a conviction to have probable cause to arrest."  <u>Couch v. City of Sheffield</u>, 708 So. 2d 144, 156 (Ala. 1998).

Section II(B)(2)(a)(iii), <u>supra</u>, demonstrates why Officer Williams had probable cause to arrest the plaintiff for Harassment, Menacing, and Disorderly Conduct.

Therefore, Officer Williams is entitled to dismissal of the false imprisonment claim in Count III for failure to state a claim upon which relief can be granted.

### b.  State-agent Immunity

Officer Williams is also entitled to dismissal of the plaintiff's state law false imprisonment claim based upon the doctrine of State-agent immunity:

> Every peace officer … shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a) (1975).

"The statute shields every defendant who (1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment and discretion." Howard v. City of Atmore, 887 So.2d 201, 204 (Ala. 2003).

A police officer qualifies as a peace officer for purposes of § 6-5-338. See Borders v. City of Huntsville, 875 So.2d 1168, 1178 (Ala. 2003) ("As a police officer, Earle qualifies as a peace officer for purposes of § 6-5-338.").

"Discretionary functions are broadly defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Borders v. City of Huntsville, 875 So.2d 1168, 1178 (Ala. 2003).

"Arrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment." Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005).

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000).

"The Cranman standard answers in the affirmative the question whether arresting a person is an exercise of judgment – a 'discretionary function' – and

therefore clothes the officer in State-agent immunity." <u>Swan v. City of Hueytown</u>, 920 So. 2d 1075, 1079 (Ala. 2005).

"[A]s a general rule, city officials are immune from suit unless they violate clearly established law." <u>Gibson v. City of Alexander City</u>, 779 So.2d 1153, 1156 (Ala. 2000).

The standard of *arguable probable cause* governs the application of discretionary function immunity to a warrantless arrest. <u>See</u> <u>Borders v. City of Huntsville</u>, 875 So.2d 1168, 1180 (Ala. 2003) ("we agree that the standard of arguable probable cause should govern further proceedings in this case"); <u>Greene v. Byrd</u>, 897 So. 2d 1107, 1115 (Ala. Civ. App. 2003) ("Our supreme court has recently adopted the concept of 'arguable probable cause' in cases in which a police officer claims discretionary-function immunity after making a warrantless arrest.").

For the reasons explained in Section II(B)(2)(a)(iii) and (iv), <u>supra</u>, Officer Williams had arguable probable cause to arrest the plaintiff for the crimes of Harassment, Menacing, and Disorderly Conduct. Therefore, Officer Williams is entitled to State-agent immunity against the plaintiff's false imprisonment claim in Count III.

### 4. *Count IV: State Law Assault and Battery Claim*

Count IV states:

28. Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

29. Defendant Williams assaulted Plaintiff while making an unlawful arrest of Plaintiff.

30.  Defendant's conduct was willful, malicious, intentional, and in bad faith.

31.  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6, ¶¶ 28-31.)

Count IV alleges Officer Williams committed an assault and battery against the plaintiff under state law.  Officer Williams is entitled to State-agent immunity against this claim.

### a.  State-agent Immunity

Officer Neal is entitled to State-agent immunity against the assault and battery claim under Code of Alabama § 6-5-338 (1975).

"Actions by an officer in executing an arrest are generally considered discretionary functions for purposes of § 6-5-338."  Walker v. Briley, 140 F. Supp. 2d 1249, 1263 (N.D. Ala. 2001).

"With regard to police officers performing their law-enforcement duties, our supreme court has stated that discretionary-function immunity must exist because a police officer should not be required to ponder and ruminate over decisions that should be made in a split second."  Thurmond v. City of Huntsville, 904 So. 2d 314, 320 (Ala. Civ. App. 2004).

An officer's decision about how much force to use during an arrest is a discretionary function.  See City of Birmingham v. Sutherland, 834 So. 2d 755, 762 (Ala. 2002) ("he was performing a discretionary function when he chose to

make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest"); Thurmond v. City of Huntsville, 904 So. 2d 314, 326 (Ala. Civ. App. 2004) ("we conclude that the … officers were engaged in the exercise of a discretionary function … when they made the judgment call on how much force to use and under what circumstances to use it").

It is true that "Discretionary-function immunity, as is the case with State-agent immunity, is withheld if an officer acts with willful or malicious intent or in bad faith." Borders v. City of Huntsville, 875 So. 2d 1168, 1178 (Ala. 2003).

However, "The Supreme Court of Alabama has indicated that courts should not employ pure speculation to find ill will or malice." Roberts v. City of Geneva, 114 F. Supp. 2d 1199, 1216 (M.D. Ala. 2000) (citing Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala. 1998)).

In Ex parte Tuscaloosa County, the Alabama Supreme Court explained:

> It is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause, but this Court has recognized that malice in law, or legal malice, for purposes of a malicious-prosecution claim, is not sufficient to defeat a state agent's defense of discretionary function immunity. This Court has required the plaintiff to prove that the defendant's conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith," by, for example, showing that the defendant "had a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment."

796 So. 2d 1100, 1107 (Ala. 2000).

"For a plaintiff's claim of malicious prosecution against a state agent to be submitted to the jury, where the state agent has moved for a judgment as a matter of law based on the defense of discretionary-function immunity, the plaintiff must have presented substantial evidence of malice in fact, or actual malice." Ex parte Tuscaloosa County, 796 So. 2d 1100, 1107 (Ala. 2000) (holding plaintiff cannot defeat immunity by asking court to infer malice from lack of probable cause).

To overcome immunity on a showing of malice, a plaintiff must offer substantial evidence of personal ill will, or a sole purpose to harass. See Ex parte Tuscaloosa County, 796 So. 2d 1100, 1107 (Ala. 2000); Couch v. City of Sheffield, 708 So. 2d 144, 153-54 (Ala. 1998); Key v. City of Cullman, 826 So. 2d 151, 157 (Ala. Civ. App. 2001).

The plaintiff's blanket allegation that Officer Williams's "conduct was willful, malicious, intentional, and in bad faith" is insufficient to overcome a motion to dismiss. (See Doc. 11 at 6, ¶ 30.) The plaintiff has not alleged any *facts* to support those allegations.

This motion is governed by the Federal Rules of Civil Procedure and federal case law interpreting those rules. Under Rule 12(b)(6), the plaintiff's shotgun use of labels, without any supporting allegations of fact, is insufficient to survive a Rule 12(b)(6) motion. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265 (1986).

Additionally, "The heightened pleading requirement is the law of this circuit." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998). More than mere conclusory notice pleading is required." Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984). "The complaint must allege the relevant facts with some specificity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).

"Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Marsh v. Butler County, 268 F.3d 1014, 1036 n.17 (11th Cir. 2001). "A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

In Taylor v. Adams, the Eleventh Circuit held, "Discretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law, immunity from suit." 221 F.3d 1254, 1260 n.9 (11th Cir. 2000).

Accordingly, the Eleventh Circuit has afforded state law immunity defenses treatment similar to that afforded to the federal qualified immunity defense. See Sheth v. Webster, 145 F.3d 1231, 1237 (11th Cir. 1998) (holding

denial of state law immunity immediately appealable like denial of qualified immunity).

Because Alabama's state law immunity, like qualified immunity, is an immunity from suit, the heightened pleading standard should also govern the plaintiff's state law claims.

Officer Williams was engaged in a discretionary function during the events alleged.  The plaintiff has not alleged any facts that overcome Officer Williams's immunity.  Therefore, Officer Williams is entitled to State-agent immunity under Code of Alabama section 6-5-338(a).

### 5.  *Count V: Section 1983 Failure to Intervene Claim*

Count V states:

32.  Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

33.  Defendant Neal owed a duty to intervene and protect Plaintiff from the assault and excessive force used against Plaintiff by Defendant Williams.

34.  As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amount of compensatory and punitive damages as a jury deems reasonable plus attorneys fees and costs.

(Am. Compl. at 6-7, ¶¶ 32-34.)

Count V asserts a § 1983 claim against Officer Neal for failure to intervene.  There is no allegation against Officer Williams in Count V.

### a. *Failure to State a Claim*

"[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

In this case, the amended complaint's alleged facts do not state a claim against Officer Williams for failure to intervene. As to Officer Williams, Count V should be dismissed for failure to state a claim upon which relief can be granted.

### b. *Qualified Immunity*

Officer Williams is also entitled to qualified immunity against the plaintiff's failure to intervene claim.

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"[I]f a defendant has not violated the law at all, he certainly has not violated clearly established law." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000).

Count V does not allege the violation of a constitutional right by Officer Williams, much less a violation of clearly established law. Therefore, Officer Williams is also entitled to qualified immunity against Count V.

### 6. *Count VI: State Law Negligent Hiring, Training and Supervision Claim*

Count VI states:

35. Plaintiff realleges all paragraphs of the complaint as if fully set forth herein.

36. Defendant City of Florala owed a duty to Plaintiff to properly hire, train and supervise Defendant Williams.

37. Defendant had at the time Plaintiff was attacked prior knowledge that Defendant Williams had used excessive force in the discharge of his duties.

38. Defendant City of Florala failed to provide additional training or supervision to Defendant Williams and continued to employ Defendant Williams which amounted to deliberate indifference to his conduct.

39. Defendant City of Florala continued to allow Defendant Williams to work unsupervised for the City with the knowledge that he had been involved in the use of excessive force against private citizens.

40 As a proximate result of Defendant's conduct Plaintiff was injured as aforesaid.

Wherefore Plaintiff demands judgment of Defendants in such amounts of compensatory and punitive damages as a jury deems reasonable plus costs.

(Am. Compl. at 7, ¶¶ 35-40.)

Count VI alleges the City of Florala negligently hired, trained, and supervised Officer Williams under state law.

### a. *Failure to State a Claim*

In his Memorandum in Support of His Opposition to Defendant Christopher Neal's Motion to Dismiss, the plaintiff concedes that Count VI does not state a claim against Officer Williams: "This Count is directed at Defendant City of Florala not Defendants Neal or Williams."  (Doc. 43 at 15, ¶ 2.)

### b. *State-agent Immunity*

Officer Williams is also entitled to State-agent immunity under Code of Alabama § 6-5-338(a).

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as ... (d) hiring, firing, transferring, assigning, or supervising personnel." Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000).

In Howard v. City of Atmore, the Alabama Supreme Court held that State-agent immunity includes training:

> In this connection, Howard argues that category (2) does not specifically mention "training." She says: "In category (2)(d), this Court identified certain conduct of supervisory personnel such as Chief McKinley as immune. This Court included hiring, firing, transferring, assigning or supervising. It did not include training." Howard's appellate brief, at 41 (emphasis added). Thus, she argues, "the conduct that is challenged in this case, i.e., training, implementing/enforcing procedures, and identification and handling of potentially suicidal persons in confinement, [does] not fit within any category of conduct recognized by [Cranman] as immune." Id. Once again, Howard reads Cranman too rigidly. "The situations listed in subparagraphs (2)(a)-(d) of the Cranman immunity rule are expressly only 'examples' of the general principle stated in paragraph (2) itself." Ryan v. Hayes, 831 So. 2d 21, 31

(Ala. 2002). ***Category (2)(a)-(d) includes "training," as well as "supervising."***

887 So. 2d 201, 210 (Ala. 2003) (emphasis added).

"Training and supervision ... fall squarely within category (2) of the Cranman formula." Howard v. City of Atmore, 887 So. 2d 201, 209-10 (Ala. 2003). "Negligent training and supervision are considered discretionary acts." Sherrill v. City of Prattville, Nos. 04-cv-760-T, 04-cv-761-T & 04-cv-762-T, 2005 U.S. Dist. LEXIS 35452, at *13 (M.D. Ala. Dec. 2, 2005) (Thompson, J.).

"Hiring, training, and supervision ... are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." Hardy v. Town of Hayneville, No. 99-A-86-N, 1999 U.S. Dist. LEXIS 4219, at *41 (M.D. Ala. Apr. 1, 1999), modified on reh'g, 50 F. Supp.2d 1176, 1195 (M.D. Ala. 1999) (Albritton, J.).

"Hiring, training, and supervision ... are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." McClure v. Houston County, 306 F. Supp. 2d 1160, 1168 (M.D. Ala. 2003) (Thompson, J.) (quoting Hardy v. Town of Hayneville, No. 99-A-86-N, 1999 U.S. Dist. LEXIS 4219, at *41 (M.D. Ala. Apr. 1, 1999)).

As to Officer Williams, Count VI should be dismissed for failure to state a claim upon which relief can be granted and pursuant to the doctrine of State-agent immunity. See Ala. Code § 6-5-338(a);

## III.  CONCLUSION

For the foregoing reasons, Officer Williams respectfully moves to dismiss all claims against him with prejudice.

**s/ James H. Pike**
Attorney for Defendant
Officer Perry Williams

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail jpike@scplaw.us

## CERTIFICATE OF SERVICE

I, James H. Pike, certify that on May 19, 2008, I electronically served this

document upon:

L. Cooper Rutland, Jr.
RUTLAND LAW, LLC
P.O. Box 551
Union Springs, Alabama  36089

**s/ James H. Pike**
James H. Pike